IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAD B. DICKSON, | : | CIVIL NO. 1:CV-09-0195 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JAMES McGRADY, et al., | : | |
| Defendants | : | |

### M E M O R A N D U M

Chad B. Dickson ("Dickson"), an inmate confined at the State Correctional Institution at Retreat ("SCI-Retreat"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. The matter proceeds on the original complaint and a supplement thereto. (Doc. Nos. 1, 9.) Named as Defendants are James McGrady, Superintendent at SCI-Retreat, and seven additional SCI-Retreat employees.[1] In the complaint, Dickson sets forth allegations of denial of access to the courts, and retaliation in the form of intrusive cell searches and the issuance of false misconduct charges. Before the Court for consideration is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 15.) The motion is fully briefed and, for the reasons that follow, will be granted in part and denied in part.[2]

---

[1] These Defendants are Correctional Officers Miller, Lanning, Hall, Novak and Sweeney, Sergeant Burns and Lieutenant Pall.

[2] In opposing Defendants' motion to dismiss Plaintiff files an opposition brief which he also refers to as his "cross-motion for summary judgment." (Doc. No. 18.) In light of the Court's disposition of the pending motion to dismiss, the fact that Plaintiff never filed documents in support of his motion and the fact that no discovery period has taken place in this case, the motion will be denied without prejudice to refile at a later date.

1

**I.     Background**

In the complaint Dickson alleges that Defendant Miller confiscated his legal papers, which included a legal discovery packet relevant to his criminal trial held in Cambria County, Pennsylvania, on March 12 and 13, 2008. Miller is alleged to have engaged in this activity because he is a party in the Cambria County case. Dickson states that because of Miller's actions he was unable to use the confiscated papers as evidence in his pro se trial. Dickson further alleges that Miller gave orders to Defendant Hall to conduct cell searches to remove specific legal papers. (Doc. No. 1, Compl. at 2.) The confiscated papers were thereafter given to Defendants Miller and Pall. Defendants Pall, Sweeney, Novak and Lanning are also alleged to have confiscated Dickson's legal papers, and to have provided them to Miller. (Id.)

Dickson also claims that every time he sent documents to the law library for copying, Defendant Burns would provide the documents to Miller. It would take 24-72 hours for the papers to be returned to Dickson, and some of the papers would be missing. He claims that Defendant Lanning had a large black trash bag filled with his legal work, papers and discovery from his Cambria County trial, and that he wrote a confiscation slip that referenced some of these legal documents.

Based on the foregoing, Dickson claims that Defendants' actions interfered with his legal research and his attempts to present his trial in Cambria County. (Id. at 3.) As a result, he alleges he was unable to present an adequate defense, and was convicted and sentenced to a term of incarceration. (Doc. 9, Suppl. Compl. at 1.) He also claims that he was unable to file legal actions and complaints. (Id.) When he complained to Defendants about these matters, they retaliated against him by conducting frequent intrusive cell searches, and confiscating his papers.

He also contends that he was issued several false misconduct reports for the sole purpose of keeping him housed in the Restricted Housing Unit. (Id.) Plaintiff requests both injunctive and compensatory relief.

## II. Discussion

### A. Motion to Dismiss Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Under Fed. R. Civ. P. 12(b)(6), the court must accept as true the factual allegations in the complaint, and construe any inferences to be drawn from the allegations in Plaintiff's favor. See Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). "The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Marangos v. Swett, No. 08-4146, 2009 WL 1803264 (3d Cir. June 25, 2009)(citing Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-50 (2009). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain enough "facts to state a claim to relief that is plausible on its face" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 570 (2007), and the factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (internal citations omitted); accord Iqbal, 129 S. Ct. at 1953. The facts plead must offer more "than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., 120 S. Ct. at 1949 (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct at

3

1949 (citing Twombly, 550 U.S. at 556). Further, a district court should provide leave to amend "when amendment could cure the deficiency and would not be inequitable." Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002). A complaint that does not establish entitlement to relief under any reasonable interpretation is properly dismissed without leave to amend. Id. at 106.

### B. Analysis

In moving to dismiss the complaint, Defendants argue that: (1) the claims for money damages against Defendants in their official capacities are barred by the Eleventh Amendment; (2) the access to the courts claim is subject to dismissal for failure to establish actual injury; (3) no personal involvement has been established with respect to Defendant McGrady; and (4) the retaliation claim is subject to dismissal due to Dickson's failure to establish he was deterred from engaging in constitutionally protected activity. (Id. at 4-5.)

#### 1. Claims for monetary damages against Defendants in their official capacities

Defendants seek the dismissal of all claims for money damages set forth against them in their official capacities. The Court agrees that these claims are subject to dismissal. Unless consented to by the state, the Eleventh Amendment prevents suits from being brought in federal court against a state or one of its agencies or departments for money damages. Pennhurst v. Halderman, 465 U.S. 89, 99-100 (1984). A suit brought against an individual acting in his or her official capacity is similarly deemed to be a suit against the state, and as such, barred by the Eleventh Amendment. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

#### 2. Access to the courts claim

Defendants next argue that Dickson's access to the courts claim is subject to dismissal because he has failed to establish actual injury. Under the First and Fourteenth Amendments, prisoners retain the right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996). However, a prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. Lewis, 518 U.S. at 349. To meet this requirement, a plaintiff must show that the actions of the prison officials hindered the prisoner's efforts to pursue a nonfrivolous claim. See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008); Christopher v. Harbury, 536 U.S. 403, 415 (2002). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." Lewis, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." Id. at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 349.

Upon initial screening of the complaint, the Court found that Dickson did not allege that he was unable to pursue an "arguably actionable claim" as a result of Defendants' actions, and thus failed to demonstrate actual injury with respect to his access to the courts claims. However, he was afforded the opportunity to amend his complaint to do so. (Doc. No. 8.) Defendants argue that in filing a supplement to the original complaint Dickson merely uses the "necessary buzzwords" by claiming that he was "deprived of necessary and vital personal and legal papers/documents which left [him] unable to file legal actions and complaints." (Doc. No. 9,

Suppl. Compl.) Defendants argue that Dickson fails to describe the nonfrivolous nature of the legal actions and complaints he claims he was unable to pursue, and does not offer any proof of the actual injury he allegedly suffered. As such, they request the dismissal of his claim of denial of access to the courts.

The access to the courts claim arising out of Defendants' alleged confiscation of his legal papers appears to be two-fold. Dickson claims that because of Defendants' actions, he was unable "to file legal actions and complaints." (Doc. No. 9, Suppl. Compl. at 1.) He also claims, however, that the confiscated materials contained evidence necessary for preparing his defense in his criminal pro se trial in Cambria County. Because of Defendants' actions in confiscating his property, Dickson claims he was unable to prepare and present his defense and was convicted and sentenced to a term of imprisonment. (Doc. No. 1 at 2; Doc. No. 9 at 1.)

The Court finds that Dickson does not allege actual injury as a result of the confiscation of his property with respect to his claim that he was left unable to file legal actions and complaints. At no point in his complaint or supplement thereto does he describe the nonfrivolous nature of any legal actions or complaint that he was unable to pursue because of Defendants' actions. He does not claim that the actions involved challenges to his conditions of confinement or conviction/sentence and that he is now barred by some deadline from pursuing those claims. However, the motion to dismiss will be denied with respect to Dickson's access to the courts claim that the confiscation of his legal materials prevented him from preparing and presenting a defense at his Cambria County criminal trial. In moving to dismiss Dickson's access to the courts claim, Defendants do not address this allegation of actual injury. Accepting Dickson's factual allegations as true, and construing any inferences to be drawn from the

6

allegations in his favor, this access to the courts claim will be allowed to proceed.

### 3. Claims against Defendant McGrady

Defendants argue that even if Dickson states a First Amendment violation, he is unable to demonstrate sufficient personal involvement by Defendant McGrady to state a claim under 42 U.S.C. § 1983. They contend that McGrady, Superintendent at SCI-Retreat, is only named as a Defendant due to the supervisory position he holds within the institution. It is well-established that civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Liability cannot be based solely on the basis of a defendant's supervisory capacity, that is, there must be allegations that the official had knowledge or acquiesced in any purported acts of constitutional mistreatment. In the instant case, it appears that McGrady is named solely based upon his position as Superintendent at SCI-Retreat.

The only allegation set forth against McGrady in the complaint is that Dickson informed McGrady verbally and through the filing of a grievance of Defendants' actions, but McGrady denied his grievance. This allegation is insufficient to show the required personal involvement for stating a claim under § 1983. There are no allegations that McGrady participated in any of the alleged violations. In fact, Dickson states in his brief in opposition to Defendants' motion to dismiss that liability should be imposed upon McGrady because he should be held responsible for the actions of his subordinates. (Doc. No. 19 at 3.) McGrady's only involvement, however,

appears to be his role in responding unfavorably to the grievance Dickson filed with regard to the alleged acts after they occurred.

The law is well-settled that there is no constitutional right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977). Even if a prison provides for a grievance procedure, as the DOC does, violations of those procedures do not amount to a civil rights cause of action. Hoover v. Watson, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd, 74 F.3d 1226 (3d Cir. 1995). Further, a supervisory defendant's involvement that he responded unfavorably to an inmate's later-filed grievance does not state a claim under § 1983. See Atwell v. Lavan, 557 F. Supp.2d 532, 547 (M.D. Pa. 2008); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997). For these reasons, the Court finds that Dickson fails to state a claim against Defendant McGrady, and he will be dismissed from this action.

### 4. Retaliation Claim

Defendants also move to dismiss Plaintiff's claim of retaliation. Plaintiff contends that when he complained of conditions, Defendants retaliated against him by conducting more frequent searches, "pilfering" and confiscating his papers, destroying documents and filing false misconduct reports against him to keep him confined in the RHU.

Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001)(quoting Allah, 229 F.3d at

8

225).  This third element uses a burden-shifting framework.  The inmate bears the initial burden of proving that his constitutionally protected conduct was a substantial motivating factor in the decision to retaliate against him.  Rauser at 333-34.  A plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive.  Crawford-El v. Britton, 523 U.S. 574, 600 (1998).  Once the prisoner meets this burden, the burden then shifts to the defendant to prove by a preponderance of the evidence that he would have taken the same action even in the absence of the protected activity.  Rauser, 241 F.3d at 334.

In considering the third element, the court must take into account that the difficult task of prison administration is best left to prison officials who possess the necessary expertise.  Rauser, 241 F.3d at 334 (citing Turner v. Safley, 482 U.S. 78, 89 (1987).  Even if an inmate can demonstrate that the exercise of his constitutional rights was a substantial or motivating factor in the decision to discipline him, so long as a prison official can prove that absent the protected conduct he would have made the same decision for reasons reasonably related to a legitimate penological interest, he will prevail on a claim of retaliation.  Id.

As to the first element, the Defendants concede for the purposes of the instant motion that Plaintiff satisfies the first prong of the Rauser test by alleging that he was engaged in constitutionally protected activity - - the exercise of his right under the First Amendment to make complaints, file grievances, request slips and legal actions.

In analyzing the second element of Rauser, however, Plaintiff must show that there was an adverse action by prison officials sufficient to deter a person of ordinary firmness from

exercising his constitutional rights. Rauser, 241 F.3d at 333. In accepting as true all factual allegations set forth in the complaint, it is clear that Plaintiff fails to meet the second Rauser element. Plaintiff's own statements in the complaint reveal that he was not deterred by any alleged adverse actions taken by Defendants because he states that the continued complaints he made resulted in more retaliation. (Doc. No. 9 at 1.) Plaintiff thus demonstrates that he was not deterred from exercising his First Amendment rights, but rather continued to do so. Further, as Defendants point out, Plaintiff also was not deterred from exercising his First Amendment rights as evidenced by his continued efforts to litigate another civil rights action pending in the United States District Court for the Western District of Pennsylvania. See Dickson v. SCI Greenburg, et al., No. 2:08-cv-1102 (W.D. Pa.).[3] Plaintiff filed the action in the Western District on August 7, 2008, and has been actively litigating the matter to date. He has filed a motion to amend the complaint, an amended complaint and opposition to a motion to dismiss filed by the Defendants in said action. Based on the foregoing, it is clear that Dickson was not deterred from exercising his First Amendment rights by the alleged adverse actions of Defendants.[4]

For all of the reasons set forth above, Defendants' motion to dismiss will be granted in part and denied in part. All claims set forth against Defendant McGrady are dismissed as well as

---

[3] The Court takes judicial notice of the pending lawsuit in the Western District of Pennsylvania.

[4] Defendants further argue that Plaintiff would be unable to satisfy the third element of the Rauser test because he was found guilty of the misconducts and such finding meets their burden of showing that they would have brought the misconduct charges even if Plaintiff had not exercised his First Amendment rights. (Doc. No. 16 at 15.) The Court declines to address this issue based upon the finding that Plaintiff fails to meet the second element of Rauser. Further, even if Plaintiff had met the first two Rauser elements, Defendants argument on this point would be one for consideration in the context of a motion for summary judgment.

all claims set forth against the remaining Defendants in their official capacities for monetary damages. The motion is further granted with respect to all claims against the remaining Defendants with the exception of Plaintiff's access to the courts claim as it pertains to pursing his criminal case in Cambria County. Specifically, the motion to dismiss will be denied with respect to Plaintiff's claim that the confiscation of his legal materials prevented him from preparing and presenting a defense at his Cambria County criminal trial. This claim will proceed against all Defendants except Defendant McGrady. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAD B. DICKSON, | : | CIVIL NO. 1:CV-09-0195 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JAMES McGRADY, et al., | : | |
| Defendants | : | |

# ORDER

**AND NOW,** this 30th day of March, 2010, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to dismiss (Doc. No. 15) is **granted in part and denied in part**. The motion is **granted** with respect to (1) all claims for monetary damages against Defendants in their official capacities; (2) all claims set forth against Defendant McGrady; and (3) all claims set forth against the remaining Defendants with the exception of the access to the courts claim pertaining to Defendants' confiscation of Plaintiff's legal materials which prevented him from litigating his criminal matter in Cambria County. The motion is **denied** with respect to said claim, and it will proceed with respect to all Defendants except Defendant McGrady.

2. Defendants shall file an answer to the remaining claim within twenty (20) days from the date of this Order.

                                           S/ Yvette Kane                        
                                           YVETTE KANE, Chief Judge
                                           Middle District of Pennsylvania