IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAD B. DICKSON, | : | CIVIL NO. 1:CV-09-0195 |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| JAMES McGRADY, et al., | : | |
| Defendants | : | |

# M E M O R A N D U M

Before the Court is Defendants' motion for summary judgment (Doc. No. 135) and Plaintiff's cross-motion for summary judgment (Doc. No. 136). For the reasons that follow, the Court will grant summary judgment in favor of Defendants on Plaintiff's sole remaining claim, and deny Plaintiff's motion for summary judgment.[1]

---

[1] Also pending is Plaintiff's motion to "Strike all Responses provided by Defendants, specifically Hall, Miller, Sweeney in Admissions, Responses and Statement of Material Facts by Defendants." (Doc. No. 163.) The Court finds this motion is a weak attempt by Plaintiff to rehash discovery challenges that have previously been addressed (Doc. Nos. 132, 152), to reassert his arguments in opposition to Defendants' motion for summary judgment, and to resubmit exhibits that are already part of the record.

Further, while Plaintiff claims that he has never received any of the exhibits that Defendants reference in their briefs or motions (Doc. No. 162 at 9), this assertion is undermined by Defendants' certificate of service dated June 28, 2013, verifying that Plaintiff was served the appendix in support of their motion for summary judgment. Further, there is no question Plaintiff received Defendants' motion and brief in support of summary judgment on the same date, because Plaintiff responds to the arguments raised in those filings. Moreover, while Plaintiff alleges he did not receive a copy of the trial transcript that was included as part of Defendants' appendix, Plaintiff submits portions of the transcript in support of his own summary judgment motion. (Doc. No. 161-1.) For these reasons, Plaintiff's motion to strike will be denied.

1

I.    BACKGROUND[2]

Plaintiff Chad B. Dickson, an inmate confined at the State Correctional Institution at Retreat ("SCI-Retreat"), Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. Nos. 1, 9.) Plaintiff alleges he was denied access-to-courts because Defendants interfered with his legal research and his attempt to present an adequate defense in his Cambria County criminal trial, resulting in his conviction and incarceration. (Doc. No. 9.) He also alleges he was retaliated against, in the form of intrusive cell searches and the issuance of false misconduct charges. Named as Defendants are James McGrady, Superintendent at SCI-Retreat, and seven additional SCI-Retreat employees: Correctional Officers Miller, Lanning, Hall, Novak and Sweeney, Sergeant Burns and Lieutenant Pall. On March 30, 2010, the Court granted a motion to dismiss all claims against Defendant McGrady. The motion was further granted with

---

[2] Pursuant to Middle District of Pennsylvania Local Rule 56.1, a motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement submitted by the moving party. Statements of material facts in support of, or in opposition to, a motion are also required to include references to the parts of the record that support the statements. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See M.D. Pa. Local R. 56.1.

In the instant matter, while Plaintiff did not file a formal statement of material facts responding to the statement of facts submitted by Defendants, he did submit opposition to the motion in the form of a brief containing facts and supporting evidentiary materials. (Doc. Nos. 160, 161.) In filing his own cross motion for summary judgment, Plaintiff filed a separate supporting statement of material facts and evidentiary materials in support, but did so subsequent to Defendants' filing of their brief in opposition to his motion. (Doc. Nos. 161-1, 162.) It appears Plaintiff may have also intended that these documents be filed in opposition to Defendants' summary judgment motion. As such, in the interests of justice to this pro se litigant, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the Court will consider Plaintiff's statement of facts and evidentiary materials in addressing both summary judgment motions.

respect to all claims set forth against the remaining defendants, with the exception of the access-to-courts claim pertaining to Defendants' alleged confiscation of Plaintiff's legal materials. This is the sole claim remaining in this action.

Plaintiff alleges Defendant Miller confiscated his legal papers, including a legal discovery packet relevant to his criminal trial held in Cambria County, Pennsylvania, on March 12 and 13, 2008. He alleges that Miller did so because Miller was a party in that case and that due to Miller's actions, Plaintiff was unable to use the confiscated papers to prepare for his pro se county trial on forgery and other related charges. (Doc. No. 1 at 2.) The record shows, however, that Miller was not a party in the case. (Doc. No. 157-10.)

Plaintiff further alleges that Defendant Miller gave orders to Defendant Hall to conduct cell searches to remove specific legal papers, which were thereafter provided to Miller and Defendant Pall. (Id.) Hall maintains that he did not confiscate Plaintiff's legal papers and thereby interfere with his trial. (Doc. No. 154 at ¶ 5.) Hall also denies that pursuant to Miller's order, he entered Plaintiff's footlocker several times during Plaintiff's stay in the Restricted Housing Unit, specifically on December 14, 2007 and January 2008. (Doc. No. 157-9 at 13.) Plaintiff disputes this statement and references two CIR's issued by Hall, one dated December 14, 2007 (No. A785634), and one dated April 5, 2008 (No. A786009). (Doc. No. 161-1 at 30-31.)

Plaintiff also alleges that Defendants Pall, Novak, Lanning and Sweeney confiscated Plaintiff's legal papers and provided them to Miller. Pall[3] maintains he would never have

---

[3] Plaintiff was on read-and-copy mail monitoring in accordance with DOC Policy 803 since March 2008, as approved by then Deputy Secretary Johnson. The monitoring was ordered because Plaintiff would send the librarian computer-generated separations concerning other

personally confiscated anything from Plaintiff and interfere with Plaintiff's defense in his trial, and there is no evidence he did so. (Doc. No. 157-7 at 5.) Plaintiff disputes this and contends that Pall was involved in confiscations of his legal materials, but he submits no evidentiary materials in support of his assertion.

Defendant Novak also denies confiscating any of Plaintiff's legal papers that interfered with his defense in the Cambria County trial. After conducting an investigation, Novak did not find any confiscated item receipts ("CIR") issued by him. (Doc. No. 157-7 at 4.) Plaintiff further stated that he "didn't have a problem with Novak." (Doc. No. 157-6 at 16.)

Plaintiff alleges that Defendant Lanning had a trash bag filled with Plaintiff's legal work, papers, and discovery from the Cambria County trial, for which he wrote a CIR and handed over to Miller. Further, Plaintiff alleges that Defendant Sweeney confiscated this large trash bag upon Plaintiff's return to SCI-Retreat from his criminal trial. (Doc. No. 157-8 at ¶¶ 3-4.) The evidence of record reflects that a CIR was issued by Lanning on March 14, 2008, the day following the conclusion of Plaintiff's trial. The materials confiscated consisted of blank subpoenas, one of which had a raised seal on it, a copy of an SCI-Greensburg check with the routing number on it, DOC-generated separation sheets on Plaintiff and another inmate, and another inmate's misconduct. (Doc. No. 157-2 at 8; Doc. No. 157-6 at 17.) This confiscation was after the trial concluded. This was the only claim by Plaintiff against Lanning. (Doc. No. 157-6 at 17.)

As to the final Defendant, Burns, Plaintiff alleges that when he would send documents to

---

inmates, and request that the librarian make copies for him and return those documents to him. As Security Lieutenant at SCI-Retreat, it was Pall's duty, with permission, to read and copy the mail. (Doc. No. 157-4 at 10; Doc. No. 157-7 at 11.)

the law library for copying, Burns would provide the documents to Miller.  When the papers were subsequently returned to Plaintiff, some of them would be missing.  (Doc. No. 1.)  Plaintiff filed Grievance No. 232076, which appears somewhat related to his allegation against Defendant Burns.  (Doc. No. 157-3 at 1.)  Burns is not mentioned by name in this grievance, and it was not appealed to Final Review.[4]  (Id. at 1-7.)

At his deposition, Plaintiff alleged that two pieces of evidence which would have exonerated him at his trial were confiscated, resulting in an improper guilty verdict.  This evidence was a CD of phone recordings and a letter.  (Doc. No. 157-6 at 9.)  The CD was of phone conversations recorded between Plaintiff and two other individuals, Nieves "Snow" Calderon and Courtney Alwine.  (Id.)  The letter was from Calderon.

Extensive discussion regarding this CD and Plaintiff's representations that the CD exonerated him from criminal activity was conducted at Plaintiff's criminal trial.  The CD was made available at the trial by the Cambria County Prison, and played for the jury.  (Doc. No. 157-10 at 135-144.)  Moreover, the trial judge denied a request by Plaintiff during the trial to have Miller produce his copy of the CD of phone recordings on the basis that it was the same CD already made available and played at the trial.  (Doc. No. 157-11 at 167-190.)  As to the letter,

---

[4] The Department of Corrections' Administrative Directive 804, "Inmate Grievance System," provides a multi-step administrative grievance appeal process that was established to ensure that inmates have an avenue through which to resolve issues relating to their incarceration.  Pursuant to the DC-ADM 804, inmates must first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred.  If the inmate is unsatisfied with the initial review of his or her grievance, he or she may file an appeal of the decision with the Facility Manager.  Upon receiving a decision, the inmate may appeal that decision to Final Review with the Secretary's Office of Inmate Grievances & Appeals ("SOIGA").  (Doc. No 157-1 at ¶¶ 4, 5.)  The DOC's Handbook provides inmates with notice of the Grievance Policy and the requirements for pursuing their issues through the grievance system.  (Id., ¶ 6.)

5

it was never produced at trial. At the trial judge's direction, the SCI-Retreat search team looked for but were unable to locate this correspondence that was allegedly contained in his footlocker. (Doc. No. 157-2 at 10.) Plaintiff testified that perhaps the search team overlooked the letter in his footlocker. (Doc. No. 157-10 at 89.)

The transcript from Plaintiff's Cambria County trial reveals that he had the assistance of standby counsel, Mr. Kevin Persio. (Doc. No. 157-10.) Standby counsel was appointed by the trial court on behalf of Plaintiff on January 22, 2008, almost two months prior to trial. (Doc. No. 157-2 at 23.)

## II.  LEGAL STANDARD

By a grant of summary judgment, the Court may dispose of those claims that do not present a "genuine issue as to any material fact" and which entitle the movant to judgment as a matter of law. See Fed. R. Civ. P. 56©. The moving party has the initial burden of identifying evidence that shows the absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, the burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also Fed. R. Civ. P. 56©, (e). The nonmoving party cannot rest solely on assertions made in the

pleadings, legal memoranda, or oral argument." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex, 477 U.S. at 324. Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315. In making a summary judgment determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## III. DISCUSSION

Plaintiff's sole remaining claim is that he was denied access to courts by Defendants' alleged confiscation of Plaintiff's legal materials. The United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or through the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.").

The Supreme Court later provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this right in the abstract, or theoretical terms, but instead cautioned courts to focus on concrete outcomes when assessing such claims. Specifically, the Court observed as follows:

> Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct. at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts

7

to pursue a legal claim[.]

Id., 518 U.S. at 351-52.

Following the decision in Lewis, two guiding principles are consistently recognized when analyzing access-to-courts claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). A necessary corollary to this principle is that, in order to prevail, a plaintiff must show he lost a chance to pursue a "'nonfrivolous,' 'arguable' underlying claim." Christopher v. Harbury, 536 U.S. 403, 415 (2002). Second, a plaintiff must show that he has "no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008).

It has also been long recognized that public officials can provide meaningful access to the courts through a wide variety of means, including the appointment of counsel. Thus "[w]here a prisoner is provided an attorney by the state to represent him . . ., the prisoner's right to access to the courts is vindicated." Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir. 1988); Cook v. Boyd, 881 F.Supp. 171, 176 (E.D. Pa. 1995). Accordingly, courts in this Circuit have repeatedly held that access-to-court claims fail as a matter of law when it is shown that the plaintiff had the assistance of court-appointed counsel. See Fisher v. DeRose, No. 12-1014, 2013 WL 979457 (M.D. Pa. March 12, 2013) (dismissing access to courts claim where it is undisputed that Fisher was offered appointed-counsel and was assigned standby counsel to assist him in his pro se defense); see also Tinsley v. DelRosso, No. 08-1251, 2008 WL 2236598 (D.N.J. May 30, 2008); Tormasi v. Hayman, No. 07-5683, 2008 WL 1995125 (D.N.J. May 6, 2008); Annis v. Fayette

8

County Jail, No. 07-1628, 2008 WL 763735 (W.D. Pa. March 20, 2008); Hunter v. Shoupe, No. 06-1023, 2007 WL 120030 (W.D. Pa. Jan. 10, 2007).

    A.    **Defendants Novak, Sweeney and Lanning**

Plaintiff alleges that Defendants confiscated his legal materials, preventing him from preparing and presenting a defense at his Cambria County criminal trial. These materials are a CD of phone recordings of Plaintiff, inmate Nieves "Snow" Calderon and Courtney Alwine, and a letter written by Calderon. The undisputed facts reveal that Defendants Sweeney and Lanning were not involved in the confiscation of either of these items prior to Plaintiff's trial and, as such, could not have prevented him from using them in preparation for his trial.

While there is evidence offered by Plaintiff in his deposition that Novak was involved in the confiscation of materials in October of 2007 relating to a civil case he had pending in the Western District of Pennsylvania, with respect to the issues in the instant case Plaintiff states he " . . . didn't really have a problem with Novak. He's not causing any conflicts." (Doc. 157-6 at 16.)

Regarding Defendants Sweeney and Lanning, Plaintiff claims that Sweeney confiscated papers and gave them to Miller, and that Lanning had a large trash bag filled with his legal documents from the Cambria County trial and wrote a CIR with respect to these materials. However, the only remaining claim in this action is with respect to interference by Defendants preventing Plaintiff from preparing a defense for his trial held on March 12 and 13, 2008. The record further reveals the confiscation by Sweeney of materials from Plaintiff on March 14, 2008, following the conclusion of the trial. The documents confiscated were items Plaintiff was not permitted to have (another inmate's misconduct form, separation sheets) or no longer needed

9

since the trial was concluded (blank subpoena forms).  (Doc. No. 161-1 at 31.)  With respect to this confiscation, Lanning's only role was that of the officer who signed the CIR slip.

Clearly, this confiscation could not have affected Plaintiff's preparation of his defense in the Cambria County trial because the trial had concluded prior to the confiscation.[5]  There is no other evidence of confiscation or interference with Plaintiff's pertinent legal materials by these Defendants.  Thus, summary judgment will be granted for these defendants, and Plaintiff's motion for summary judgment with respect to these claims will be denied.

> **B.**     **Defendant Burns**

Plaintiff alleges that when he sent documents to the prison law library for copying, Defendant Burns provided the documents to Defendant Miller.  The documents would not be returned to Plaintiff for 24 to 72 hours, and some documents were missing.  In reviewing the evidentiary materials submitted by the parties, the Court finds that any access-to-courts claim raised against Burns is unexhausted.

Pursuant to 42 U.S.C. § 1997e(a), Plaintiff is required to exhaust his available administrative remedies.  This section provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion of available administrative remedies is mandatory.  Booth v. Churner, 532 U.S. 731, 739 (2001).  The "exhaustion requirement applies to all inmate suits about prison life,

---

[5] To the extent Plaintiff attempts to assert in his pending motion any additional access-to-courts claims with respect to any appeals he sought to pursue following his conviction, these claims and any actual injury arising from them were not raised in the complaint and are not before the Court in this action.  (See Doc. No. 132 at 9.)

10

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73 (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 549 U.S. 199, 210-12 (2007). Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

A prisoner must "properly" exhaust his or her administrative remedies before commencing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 2387 (quoting Porter, 534 U.S. at 525). Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison

11

grievance procedures supply the yardstick for measuring procedural default."). Procedural default is a question of law. Id. at 232.

The Pennsylvania DOC had a three-tiered grievance procedure in effect at the time Plaintiff contends Burns denied him access to the courts. Grievances are first filed with the Facility Grievance Coordinator. If an inmate is dissatisfied with the result, he may file an appeal with the Facility Manager, and then seek final review with the SOIGA. (Doc. No. 157-1 at ¶ 5.) The undisputed evidentiary materials contained in the record reveal that the only grievance filed by Plaintiff that could even arguably be construed to be related to any claim against Burns is Grievance # 232076 (Doc. No. 157-3 at 2). In this grievance, Plaintiff complains that he has experienced multiple delays in getting legal documents back that he sent to the library for copying. He states that "[I] do not know for sure, however I believe the documents are given to Capt. Miller to read then sent to me." (Id.) In the grievance, he complains about delay and the impropriety of Miller reading his documents, but neither names Burns in the grievance, nor alleges that documents are missing when the copies are returned.

However, even if the Court construed this grievance as raised against Burns, Plaintiff failed to exhaust his grievance to the final level of review in DOC administrative remedy process. The undisputed record demonstrates that after receiving a denial of the grievance from the Grievance Coordinator on June 24, 2008 (Id. at 1), and the denial of his appeal by the Superintendent on July 1, 2008 (Id. at 6), Plaintiff failed to appeal this matter to the final level of review with the SOIGA.

Plaintiff makes the general claim in his statement of material facts that he filed several grievances and request slips with respect to his claims in this lawsuit, but that "grievances would

be intercepted or never processed at certain levels." (Doc. No. 162 at ¶ 10.) However, he offers absolutely no evidentiary support for this statement with respect to his efforts to exhaust his claims against Burns. Accordingly, the claims raised in the complaint against Burns are unexhausted, and summary judgment is warranted against Plaintiff on this claim.

C. **Remaining Defendants**

Plaintiff alleges that Defendant Miller confiscated legal papers relevant to his Cambria County criminal trial held on March 12 and 13, 2008, because he was a party in the case. As a result, Plaintiff was unable to use the confiscated materials to prepare his defense, and was convicted. He further alleges that Miller gave orders to Defendant Hall to conduct searches to remove legal papers, and that the papers were then given to Defendants Miller and Pall.

The undisputed record reveals that Miller was not a party in Plaintiff's criminal trial in Cambria County. (Doc. Nos. 157-10, 157-11.) The record further reveals that Plaintiff's issue with Pall was that Pall interfered with his mail. However, Plaintiff was on "read-and-copy" mail monitoring in accordance with DOC Policy 803 since March of 2008, as approved by then-Deputy Secretary Johnson. (Doc. No. 154-4 at 10.) The monitoring was put into effect in response to Plaintiff's practice of sending the librarian computer-generated "separations" concerning other inmates and request that the librarian make copies for him and return the documents to him. In his capacity as Security Lieutenant at SCI-Retreat, it was Pall's duty, with this permission, to read and copy mail. Pall never withheld Plaintiff's mail. (Doc. No. 157-7 at ¶¶ 22, 24.) There is no evidence in the record suggesting that Pall ever confiscated or withheld any of Plaintiff's legal materials at issue in this case, specifically the CD or letter, and preventing him from using this evidence at his criminal trial.

13

Defendants further maintain that the record lacks any evidence that Hall confiscated Plaintiff's legal materials and interfered with his criminal trial. Hall specifically denies, per order of Miller, being in Plaintiff's footlocker on December 14, 2007, and in January of 2008. (Doc. No. 157-9 at ¶ 13.) Plaintiff disputes this statement, and comes forward with a copy of a CIR issued by Hall on December 14, 2007. (Doc. No. 161-1 at 30.)

However, any disputes that may exist with respect to Defendants Miller and/or Hall are not material, and do not prevent the grant of summary judgment in favor of Defendants and against Plaintiff. First, the two pieces of confiscated evidence identified by Plaintiff as serving the basis for his access-to-courts claim, the CD and the letter, are not listed on any CIR in the record as items ever confiscated by Defendants. Further, with respect to the challenged letter, Plaintiff states that at least two months prior to the trial, the letter was in his footlocker. (Doc. No. 157-11 at 17.) At the trial on March 13, 2008, he testified that the letter is still in his footlocker and that the search team must have overlooked it when they were directed by the court to retrieve it. (Id. at 18, 23; Doc. No. 157-6 at 8-9.) In fact, Plaintiff even requested that the trial court allow him to call Defendant Miller and direct him where to look for the letter in his footlocker. (Id. at 18.) This evidence is clearly inconsistent with Plaintiff's assertion that the letter had been confiscated by Defendants months earlier.

With respect to the CD, there is no support in the record that Plaintiff ever possessed the CD or that it was ever confiscated from him. Rather, the relevant phone conversations at the prison were recorded by the prison, and a copy of the CD was provided to Miller. In his deposition, Plaintiff testified that the CD of phone recordings was exculpatory evidence that would have cleared him from any criminal liability, but maintains that Miller withheld the

original CD at trial. In his deposition, he claims that the CD was not produced at trial. However, the record indicates that an extensive discussion regarding the CD was held during the trial, and the trial judge denied a request by Plaintiff to have Miller produce his copy of the CD because the CD that was played for the jury was the same CD as the copy in Miller's possession. (Doc. No. 157-11 at 177-190.) Thus, because the CD was presented to the jury and played at trial, summary judgment is clearly warranted in favor of Defendants and against Plaintiff on this issue.

Additionally, a grant of summary judgment for Defendants is proper because Plaintiff had standby counsel at trial. It is undisputed that on January 22, 2008, Plaintiff was appointed standby counsel Kevin Persio to assist him in his Cambria County trial. (Doc. No. 157-2 at 23-24.) While Plaintiff technically proceeded <u>pro se</u> in this matter, the record is replete with undisputed evidence that Persio functioned as counsel prior to trial and actively participated as counsel for Plaintiff throughout the entire trial. Persio was present at all court proceedings and participated on Plaintiff's behalf in the communications and meetings with the court and opposing counsel that took place at trial. (Doc. No. 157-10 at 13, 18, 20, 26 and 217.) Persio was provided witness lists and all documents used at the trial (Doc. No. 157-2 at 25; Doc. No. 157-11 at 14), and the trial transcript reveals his active role in objections and resolving all issues that came up during the trial (Doc. No. 157-11 at 68-69, 73, 88-89, 99-102, 207, 217). These discussions included issues relating to the challenged CD and letter evidence. (<u>Id</u>. at 180-190). Persio's role as functioning counsel for Plaintiff is best illustrated during the second day of trial when he conducted the direct examination of witness Nigborowicz (Doc. No. 157-11 at 123-131), the direct and re-direct examinations of witness Smith (<u>Id</u>. at 139-142, 147-151), and the

15

cross and re-cross examinations of witnesses Calderon (Id. at 44-63), Sinclair (Id. at 82-93, 96-98) and Plummer (Id. at 107-114). Even counsel for the Commonwealth acknowledged Persio's level of involvement on Plaintiff's behalf and questioned Plaintiff's "pro se" status. (Id. at 192.)

The undisputed evidence unequivocally demonstrates that Plaintiff was appointed standby counsel to assist him in his criminal trial, and that he actively utilized standby counsel prior to and throughout his criminal trial.[6] This is fatal to his access-to-courts claim against Defendants.

For these reasons, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment with respect to the sole remaining claim in this action. An order consistent with this memorandum follows.

---

[6] In fact, Plaintiff states in his deposition that Persio was continuing to assist him following the trial with respect to his post-trial and appeal rights. (Doc. No. 157-2 at 12.) While the only issue before the Court is with respect to denial of access to the courts in presenting a defense at the trial, and not with respect to any post-trial interference, Plaintiff's statement further demonstrates Persio's involvement in Plaintiff's criminal trial.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAD B. DICKSON, | : | CIVIL NO. 1:CV-09-0195 |
|     Plaintiff, | : | |
| | : | (Judge Kane) |
|   v. | : | |
| | : | |
| JAMES McGRADY, et al., | : | |
|     Defendants | : | |

## ORDER

**AND NOW,** this 25th day of September, 2013, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion to strike (Doc. No. 163) is **denied**.

2. Defendants' motion for summary judgment (Doc. No. 135) is **granted** and Plaintiff's cross-motion for summary judgment (Doc. No. 136) is **denied** with respect to the remaining claims in this action. The Clerk of Court is directed to enter judgment in favor of Defendants Miller, Lanning, Hall, Novak, Burns, Sweeney and Pall with respect to the remaining claims and against Plaintiff.

3. The Clerk of Court is directed to **close this case**.

4. Any appeal from this order will be deemed frivolous, lacking in probable cause and not taken in good faith.

S/ Yvette Kane
Yvette Kane, Judge
United States District Court
Middle District of Pennsylvania